## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CHARLES SCHWAB & CO., INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** 7:19-cv-8245 |
| **v.** | : | |
| | : | |
| **PETER PAVLAKIS,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT

Plaintiff, Charles Schwab & Co., Inc. ("Schwab"), hereby submits this Complaint against its former employee, Peter Pavlakis ("Pavlakis" or "Defendant"), seeking a preliminary injunction to preserve the *status quo ante* pending arbitration of its claims before a Financial Industry Regulatory Authority ("FINRA") Arbitration Panel pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure.

## PRELIMINARY STATEMENT

Schwab seeks injunctive relief arising out of Pavlakis' misuse of Schwab's trade secret customer information and his ongoing, unlawful solicitation of multiple Schwab clients. Pavlakis was entrusted with trade secret information pertaining to high net worth Schwab clients with hundreds of millions of dollars in assets held in accounts at Schwab. Previously, a client reported that Pavlakis violated his contractual obligations by contacting her concerning his departure from Schwab. Schwab sent a letter to Pavlakis demanding his compliance with his contractual obligations, and through his lawyer, Pavlakis (i) denied breaching his contract, and (ii) stated that he believed his contract was not enforceable. In light of his denial, Schwab opted not to launch headlong into litigation, instead hoping that Pavlakis would choose to comply with his contract going forward. Unfortunately, Schwab has received an additional report that

Pavlakis contacted another client to solicit her business.  Despite Schwab's efforts and its clear warnings, Pavlakis has continued his solicitation of clients to divert their business from Schwab to himself.  Injunctive relief is required to preserve the *status quo ante* pending arbitration between the parties on the merits.

## I.     THE PARTIES

1.      Schwab is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Francisco, California.  At all times relevant hereto, Schwab operated and maintained a branch located at 331 Central Park Avenue, Scarsdale, NY 10583 (the "Scarsdale Branch").

2.      Pavlakis is a former employee and Senior Financial Consultant of Schwab in its Scarsdale Branch.  Pavlakis is domiciled in New York.

## II.     JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Schwab asserts a federal claim against Pavlakis under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.  The Court also has supplemental jurisdiction over Schwab's remaining claims pursuant to 28 U.S.C. § 1367 because the claims form part of the same case or controversy as Schwab's federal question claims under the DTSA.  In addition, the Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and § 1391(b)(2) because Pavlakis resides in this district, and it is the district within which a substantial part of the events or omissions giving rise to Schwab's claims occurred.

### III.    THE FACTS

#### *Pavlakis' Role at Schwab and Agreement with Schwab*

5.    Pavlakis is a former registered representative of Schwab.  At the time of his termination of employment from Schwab, Pavlakis was employed as a Senior Financial Consultant.

6.    As a Financial Consultant at Schwab, Pavlakis worked with clients to help them set goals, to determine their financial strategies, and to review their progress.  Financial Consultants can also help clients arrange to receive a personal financial plan, which is a comprehensive analysis of their financial situation.  They also partner with other Schwab employees to provide clients with services ranging from estate planning, to fixed income planning, to education and retirement planning.  These clients have hundreds of millions of dollars in assets in their accounts at Schwab.  Each year, they generate hundreds of thousands of dollars in revenues and profits.

7.    Schwab's business model is unlike many other securities brokerage firms.  Pavlakis did not develop a "book" of business through cold calls, marketing efforts, or his own connections like brokers at other brokerage firms do.  Instead, Schwab provided Pavlakis with pre-existing Schwab clients or qualified leads to service.

8.    Schwab is a broker/dealer that offers investment services and products, and has approximately 12 million active client brokerage accounts.  Some of these clients have asset levels and needs extending beyond basic brokerage services.

9.    To enable Pavlakis to service its clients, Schwab provided him with access to Schwab's extensive client records and information, including clients' transactional histories,

account types, account balances, asset allocations, income, liquid and total net worth, tax status, tax information, investment objectives, and other personal financial information.

10.     There is no public source available from which Pavlakis could ascertain the identities and contact information of Schwab's clients, much less the high net worth clients he serviced at Schwab.  The identities of the clients assigned to Pavlakis at Schwab (as well as each client's corresponding financial information) are not generally known to third parties.

11.     The identities and contact information of Schwab's clients would be very valuable to Pavlakis and any financial services firm for which he is working because this information would identify high net worth clients who generate significant revenues and who have demonstrated a need and desire for a heightened level of financial service.  Pavlakis and his new firm or employer would unfairly benefit from this information because it would enable them to target financial products, services, and marketing efforts to a pre-selected elite group of clients without the need to spend the significant amount of time, money, and resources Schwab has spent to identify and develop such clients.

12.     All Schwab registered representatives who interact with clients are required to sign a confidentiality and non-solicitation agreement.   Accordingly, Pavlakis executed a confidentiality and non-solicitation agreement when he began at Schwab, and from time-to-time, he renewed his commitment by signing subsequent versions of those agreements.  The agreement most recently executed by Pavlakis ("Agreement") as maintained by Schwab in its files is attached as Exhibit A and incorporated herein by reference.

13.     In consideration of the covenants signed by Pavlakis, Schwab agreed to, and did, provide Pavlakis with continued employment, and the opportunity to participate in the FC Incentive Plan, which provides the opportunity for additional compensation based on revenue

-4-

earned by Schwab.   Schwab also provided Pavlakis with a constantly evolving pool of confidential information throughout his tenure at Schwab, compensated him, and provided him with employment related benefits.   Schwab provided him with other good and valuable consideration including assigning him specific retail client account relationships to service; providing him with Schwab sales support, operational systems, research and investment recommendations, clearing and financial services; Schwab's goodwill and reputation; and opportunities to develop relationships with Schwab customers.

14.   In signing the Agreement, Pavlakis made two key promises to Schwab, which he subsequently breached.   First, he promised that he would not solicit or induce clients to divert, transfer, or otherwise take away business from Schwab or solicit Schwab employees to leave their employment with Schwab.   Second, he promised that, except as required to perform his job duties, he would not use or disclose Schwab's confidential customer information, specifically including the identities of its customers, their names, telephone numbers, or any other client account or financial information.   Pavlakis breached both of these promises to Schwab.

### *Pavlakis' Obligations Not to Solicit Schwab Clients*

15.     Pavlakis agreed that during his employment with Schwab, and for a period of 18 months thereafter, he would not solicit or induce any Schwab clients whom he serviced or about whom he gained Confidential Information, in an attempt to divert, transfer, or otherwise take away business from Schwab.  *See* Ex. A at ¶ 4.  For the avoidance of doubt, the Agreement clarified that "solicitation includes initiating contact with Clients for purposes of notifying them of my anticipated or actual departure from Schwab and/or my new or subsequent place(s) of employment or for purposes of encouraging or inducing them to transfer their accounts to my new firm." *Id.*

### *Pavlakis' Agreement not to Use Schwab Customer Information*

16.     In his Agreement, Pavlakis acknowledged that he would be given access to confidential information, including trade secrets.  *See* Ex. A at ¶ 1.  Pavlakis agreed that "Confidential Information" includes "the identities of clients as clients of Schwab; names, addresses, phone numbers, email addresses, account numbers or financial or personal information pertaining to Schwab clients...." *See id.* at ¶ 2.  He also acknowledged and agreed that "Confidential Information does not lose its confidential status merely because I commit it to or recreate it from memory." *Id.*

17.     The Agreement also defines Confidential Information to include "all information Schwab treats or is obligated to treat as confidential...." *Id.*

18.     In light of this access to Confidential Information, Pavlakis agreed not to assert any claim to it, or to use or disclose it during or after his employment with Schwab, except as necessary to perform his duties on behalf of Schwab.  *See id.* at ¶¶ 1 and 10.  Further, Pavlakis agreed not to remove any Schwab property, including any Confidential Information, from

FPDOCS 36034737.2

Schwab except for the purpose of carrying out his duties for the company.  *See id.* at ¶ 6.  He also agreed that, upon the termination of his employment from Schwab, he would immediately return all property and Confidential Information to Schwab.  *Id.*

19.     Schwab did not rely solely on the Agreement to ensure Pavlakis' compliance with his obligations.  At the time his employment with Schwab came to an end, Pavlakis also signed a "Certification of Return of Schwab Property" ("Certification").  The Certification is attached as Exhibit B and incorporated herein by reference.  The Certification provides that Pavlakis is "in compliance with all of the terms and conditions of the [Agreement]", and acknowledges that he is not to remove any Confidential Information, is obligated to immediately return any Schwab property or Confidential Information, and finally, that he will continue to hold any Confidential Information he learned during the course of his employment in strict confidence and not to disclose it or use it for his benefit, including for the benefit of any entity in which he may have an interest. *Id.*

20.     The customer non-solicitation and confidentiality provisions in the Agreement are reasonable and necessary to protect Schwab's legitimate interests.  These legitimate interests include (a) "trade secrets" as defined by the DTSA and under New York common law; (b) Confidential Information as defined in the Agreement to the extent it does not qualify as trade secrets; and (c) Schwab's goodwill, including the relationships Schwab has developed with its customers over the years.

### *Pavlakis Breached His Agreement*

21.     Upon the end of his employment with Schwab, Schwab's counsel sent Pavlakis a letter enclosing a copy of his Agreement, outlining his confidentiality and non-solicitation obligations, and reiterating that Schwab expected him to comply with his contractual obligations.

Additionally, when Schwab received an initial report of solicitation from a client, it sent Pavlakis a second letter demanding that he immediately cease and desist his wrongful conduct, and again reminded him on his post-employment obligations to Schwab.

22.    Despite being reminded twice of his obligations, Pavlakis has continued to solicit clients in violation his Agreement.  Specifically, a client recently reported to Schwab that Pavlakis contacted her to solicit her business.

23.    Pavlakis' foregoing conduct constitutes breaches of paragraphs 1, 2, 4, 5, 10 and possibly other paragraphs of his Agreement.

24.    To facilitate his solicitation, Pavlakis has necessarily used his knowledge of the clients' identities, their contact information, and their financial needs.  All of this is information that Pavlakis learned by virtue of his tenure at Schwab, and he is contractually obligated not to use it except on behalf of Schwab.  *See* Ex. A at ¶ 1.  Pavlakis' use of client information is contrary to his Agreement even if he recreated the client information from memory after leaving Schwab.  *See id.* at ¶ 2 ("I understand and agree that Confidential Information does not lose its confidential status merely because I commit it to or recreate it from memory." ); *see also* ¶ 10 ("I understand that Schwab's policy and this Agreement prohibit departing employees from taking client lists and account information or from recreating such information from memory.").

25.    In addition, as noted above, paragraph 4 of the Agreement precludes Pavlakis from soliciting clients.  Solicitation is defined to include initiating contact with clients for the purpose of notifying them of Pavlakis' departure from Schwab or his new employment.  *Id.* at ¶ 4.

26.    Upon information and belief, and as Schwab expects to establish upon further investigation and discovery, Schwab alleges that Pavlakis has solicited other high net worth clients, and he intends to continue soliciting Schwab clients unless he is enjoined from doing so.

27.     Upon information and belief, and as Schwab expects to establish upon further investigation and discovery, Schwab alleges that Pavlakis intends to continue using Schwab's confidential, trade secret client information to facilitate his solicitation of Schwab clients unless he is enjoined from doing so.

28.     Contemporaneously with the filing of this civil action, Schwab has commenced a FINRA arbitration against Pavlakis seeking permanent injunctive relief and damages.  Pursuant to FINRA Code of Arbitration Procedure Rule 13804, Schwab seeks interim injunctive relief from this Court to preserve the status *quo ante* pending arbitration.  Pursuant to FINRA Rule 13804, interim injunctive relief (such as a preliminary injunction) must be sought solely in a court of competent jurisdiction.

29.     Unless Pavlakis is preliminarily enjoined pending arbitration on the merits, Schwab will be irreparably harmed by:

(a)     Disclosure and misuse of trade secrets, client lists, and/or other confidential information that is solely the property of Schwab and its clients;

(b)     Solicitation of Schwab's clients;

(c)     Loss of confidentiality of the information contained in clients' conduct records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(d)     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

30.     Schwab has no adequate remedy at law.

## COUNT I
## BREACH OF CONTRACT

31.     The allegations of Paragraphs 1 through 30 are incorporated herein by reference with the same force and effect as if set forth in full below.

32.     The Agreement is a valid and enforceable contract that is supported by adequate consideration.

33.     Pavlakis executed the Agreement in exchange for compensation and other benefits he received from Schwab.  Pavlakis also acknowledged in the Agreement that he would be given access to Confidential Information about Schwab's clients.  *See* Ex. A at ¶ 1.  This information was provided to Pavlakis not only at the outset of his tenure, but also he was provided with continuing access to an evolving and constantly updating pool of information about the Schwab clients he was assigned to service, all of which was essential to his ability to perform his duties as a Schwab Financial Consultant.

34.     Under the Agreement, Pavlakis agreed that he would not take, use, or disclose Confidential Information (as defined in the Agreement) except as necessary for the performance of his duties on behalf of Schwab.

35.     In addition, Pavlakis also agreed that the names, addresses and contact information of Schwab customers are protected from disclosure as personally identifiable information under the Gramm-Leach Bliley Act and its implementing federal regulations, commonly referred to as Regulation S-P.  *See* 17 C.F.R. Part 248.  Even the fact that an individual is a customer of a specific financial institution – here, Schwab – is protected from disclosure under Regulation S-P.  *See* 17 C.F.R. § 248.3.  These federal regulations underscore the highly confidential nature of financial services customer information.  For these reasons, Pavlakis agreed not to violate Regulation S-P.  Paragraph 7 of the Agreement states as follows:

-10-

**Obligation to Protect Confidential Information and Intellectual Property.** I will promptly notify Schwab if I become aware of or suspect any unauthorized use or disclosure of Confidential Information and/or Intellectual Property by me or anyone else, whether intentional or accidental. My obligation to protect non-public personal information ("NPI") about Schwab customers is also governed by Regulation S-P. (See 17 C.F.R. §248.10(a)(1)). Regulation S-P prohibits Schwab from disclosing NPI about its customers to nonaffiliated third-parties. NPI includes, but is not limited to, Schwab customer names, addresses, telephone numbers, account information, and information that identifies an individual as a customer of Schwab. I understand that Schwab does not share customer NPI with nonaffiliated third-parties. Pursuant to Regulation S-P, I am also prohibited from sharing Schwab customer NPI with nonaffiliated third-parties, including a new employer (except as provided for in paragraph 10 of this Agreement). My non-disclosure obligations under Regulation S-P continue after my employment at Schwab ends.

Ex. A at ¶ 7.

36.    Pavlakis breached paragraphs 1, 2, 4, 5 and 10 the Agreement by the above-described conduct.

37.    Schwab believes and therefore alleges that Pavlakis will continue to violate his contractual obligations, and he will continue to violate these obligations in the future unless restrained.

38.    As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm for which it lacks an adequate remedy at law, as well as present economic loss and other incalculable financial loss.

39.    Unless Pavlakis is enjoined from the foregoing conduct, Schwab will be irreparably harmed by: (a) disclosure of Schwab's trade secret customer information, and other confidential account information that is solely the property of Schwab; (b) loss of goodwill; and (c) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS
## DTSA (18 U.S.C. § 1836 *et seq.*) and N.Y. COMMON LAW

40.    The allegations of Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

41.    The books, files and records of Schwab, the confidential information contained therein, and especially the data pertaining to Schwab clients, including clients' names and addresses, as well as additional information such as clients' social security numbers, account numbers, financial status, financial statements, investment objectives and preferences, assets and/or securities held by these customers, and other highly confidential personal and financial information concerning Schwab's clients, are trade secrets of Schwab subject to protection under the DTSA, 18 U.S.C. § 1836 *et seq.* and New York common law.  Schwab uses its trade secrets in interstate commerce as its clients are serviced by individuals across state lines and Schwab's financial services include the purchase and sale of securities in interstate commerce.

42.    This information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use.  The identities of Schwab's clients are not readily available to the public or to Schwab's competitors.  Schwab has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

43.    Schwab has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Schwab computer systems and records, restricting access to its business premises, and having registered representatives, including Pavlakis, sign agreements which expressly prohibit the use, removal and disclosure of such information outside of Schwab. *See*, *e.g.*, Ex. A.

-12-

44.     Schwab and its affiliates take other steps to protect the secrecy of this information.  For example, Schwab trains its registered representatives on their obligations to protect client information and, in addition to employing managers to monitor communications, Schwab utilizes a centralized management operation with managers responsible for monitoring outgoing correspondence to protect against the wrongful dissemination of proprietary information.

45.     In addition, Schwab's computer network and e-mail systems are designed to flag outgoing emails that contain client information, and the use of fax machines is restricted and monitored to prevent customer information from being transmitted by fax.

46.     Schwab also has adopted the Charles Schwab Corporation "Code of Business Conduct" (the "Code").  The Code has a specific section on "Confidentiality of Client Information," which provides: "Information concerning the identity of clients and their transactions and accounts is confidential.  Such information may not be disclosed to persons within the company except as they may need to know it in order to fulfill their responsibilities to the company.  You may not disclose such information to anyone or any firm outside the company" except in very limited circumstances that do not apply here.  The Code also states: "You have the responsibility to safeguard proprietary information of the company and comply with the company's Confidentiality, Non-solicitation and Assignment Agreement, the terms of which are a condition of your employment."  The Code is attached as Exhibit C and incorporated herein by reference.

47.     As noted above, the names, addresses and contact information of Schwab customers are also protected from disclosure as personally identifiable information under the

FPDOCS 36034737.2

Gramm-Leach Bliley Act and its implementing federal regulations, commonly referred to as Regulation S-P.  *See* 17 C.F.R. Part 248.

48.     As described above, Pavlakis has improperly and without authorization misappropriated, retained, used, disclosed, and/or exploited Schwab's trade secrets, including Schwab's confidential customer information, for the purposes of soliciting customers to transfer their accounts from Schwab to Pavlakis.

49.     The conduct constitutes an actual and threatened misappropriation and misuse of Schwab's trade secret information.

50.     Upon information and belief, and as Schwab expects to establish on further investigation and discovery, Pavlakis has acquired either physically or by memory and used Schwab's trade secret customer information without Schwab's consent.  Pavlakis engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Pavlakis owed and continues to owe Schwab as a former agent and registered representative of Schwab.  Pavlakis' conduct was willful and malicious.

51.     As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm and loss.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, by virtue of the foregoing acts and conduct complained of in Counts I and II, Schwab demands judgment in its favor and against Pavlakis as follows:

(1)     Schwab requests that the Court issue a preliminary injunction against Pavlakis to preserve the *status quo ante* pending the outcome of an expedited arbitration hearing to be held

pursuant to Rule 13804 of the Financial Industry Regulatory Authority Code of Arbitration Procedure, and respectfully requests that the order/injunction:

        (a)      preclude Pavlakis from using, disclosing, or transmitting for any purpose, including the solicitation or conducting of business or initiation of any contact with Schwab clients, the information contained in the records of Schwab, or other information pertaining to Schwab clients, including, but not limited to, the names, addresses, email addresses, telephone numbers, personal data and financial information of the clients (excluding members of Pavlakis' immediate family and any customers who have signed account transfer forms), even if such information is or was recreated by Pavlakis in whole or in part from memory;

        (b)      preclude Pavlakis from soliciting any business from, or initiating any contact or communication with any Schwab client whom Pavlakis has serviced at Schwab, and/or whose identities Pavlakis has learned as a result of his employment at Schwab (the "Client(s)"), including for the purpose of advising any Clients of his departure from Schwab, any new employment, or for the purpose of inviting, encouraging, or requesting the Client divert business from Schwab (excluding members of Pavlakis' immediate family and any Clients who have signed account transfer forms);

        (c)      preclude Pavlakis from destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) in Pavlakis' possession or control which were obtained from, or contain information derived from, any Schwab records, which pertain to Schwab's clients, or which relate to any of the events alleged in the Complaint in this action;

(d)      compel Pavlakis, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of any financial services firm with whom Pavlakis has affiliated, to provide to Schwab's counsel any and all records or information pertaining to Schwab's clients or its business (even if such information was recreated utilizing his memory), and/or which were obtained by Pavlakis as a result of his employment with Schwab, whether in original, copied, recreated, handwritten, electronic or any other form, and purge any such records and information from their possession, custody, or control, within 24 hours of notice to Pavlakis or his counsel of the terms of the Court's Order; provided, however, that any records and information in computerized or electronic form (including but not limited to personal computers, laptop computers, tablet devices, iPhones, Android phones, mobile telephones and any other device in, or on, which data can be electronically stored) shall be provided by Pavlakis to his counsel within 24 hours of notice to Pavlakis or his counsel of the terms of the Court's Order, and that Pavlakis' counsel shall preserve the integrity of such devices and immediately make any and all such devices available for inspection and duplication by Schwab's counsel and/or computer forensic consultants.

(2)      Awarding any such other further and additional relief that the Court deems just and proper.

Dated: September 4, 2019.

Respectfully submitted,

By: */s/ Kathleen McLeod Caminiti*
Kathleen McLeod Caminiti
Fisher & Phillips LLP
620 Eighth Ave., 36th Floor
New York, NY 10018
Phone:  (212) 899-9982
Fax:  (212) 956-1971
E-mail:  kcaminiti@fisherphillips.com

-16-

and

Michael R. Greco
(Subject to Admission Pro Hac Vice)
Fisher Phillips LLP
1801 California Street, Suite 2700
Denver, Colorado 80202
Telephone: (303) 218-3655
Fax: (303) 218-3651
Email: mgreco@fisherphillips.com

**ATTORNEYS FOR PLAINTIFF
CHARLES SCHWAB & CO., INC.**

FPDOCS 36034737.2